UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

MARY SEGUIN, *pro se*
    *Plaintiff,*

vs.                                    Case No.: 1:13-cv-95

PAUL SUTTELL, et al.
    *Defendants*

## DEFENDANTS' MOTION TO DISMISS "PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES AND JURY DEMAND" (DOCKET ENTRY NO. 25)

Now come Defendants Suttell, Chafee, Constantino, Santilli, Glucksman, Bedrosian, McCann, Forte, Kilmartin, Giarrusso and Capineri ("State Defendants" or "Defendants"), and move this Court to dismiss "Plaintiff's First Amended Complaint for Damages and Jury Demand" (Docket Entry No. 25). In support of this Motion, State Defendants rely upon the attached Memorandum of Law and on the following Exhibits:

    A. Seguin v. Bedrosian, PCSC No. 2012-0124 Pleadings:

        1. Docket
        2. First Amended Complaint
        3. Motion to Dismiss
        4. Transcript
        5. Order
        6. Judgment

    B. Family Court Dockets:

        1. K2001-0500A
        2. K2001-0503
        3. K2001-0521M
        4. K2004-0077A
        5. P2004-0806A
        6. P2011-0026A

C. Family Court Orders:

    1. K2001-0521M
    2. P2011-0026A
    3. K2001-0503

D. <u>Meyersiek v. Seguin</u>, FC K2001-0521M pleadings

E. <u>Meyersiek v. Seguin</u>, KCSC 2003-0250 pleadings

F. <u>Seguin v. Meyersiek</u>, PC 2010-1377:

    1. Docket
    2. Motion for Sanctions

G. <u>Seguin v. Seguin</u>, SU 2010-0220 pleadings


A Memorandum in Support hereof is attached.


        State Defendants,
        By Their Attorney,
        PETER F. KILMARTIN,
        ATTORNEY GENERAL

        */s/ Rebecca Tedford Partington*
        */s/ Susan E. Urso*
        _____
        Rebecca Tedford Partington, #3890
        Susan E. Urso, #4688
        Assistant Attorneys General
        150 South Main Street
        Providence, Rhode Island 02903
        Tel:  401-274-4400
        Fax:  401-222-2995

## <u>CERTIFICATION</u>

I hereby certify that I have filed the within Motion via the ECF system and that a copy is available for viewing and downloading and that I mailed a copy by first class mail, postage prepaid on this 5th day of September, 2013.

Mary Seguin
PO Box 4111
Edmonton, AB T6E4S8
Canada

*/s/ Susan E. Urso*

_____

3

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND


MARY SEGUIN, *pro se*
    *Plaintiff,*

VS.                                          Case No.:  1:13-cv-95

PAUL SUTTELL, et al.
    *Defendants*


**MEMORANDUM OF LAW IN SUPPORT OF DEFNDANTS' MOTION TO DISMISS
"PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES AND JURY
DEMAND"**

## I.    INTRODUCTION

This is Plaintiff Mary Seguin's fifth civil action in her crusade against Rhode Island's

Family Court system, its judiciary, and other state officials.[1]  Seguin is a disgruntled Family

Court litigant who has bombarded this Court with documents alleging misfeasance in the

handling of her domestic and child custody matters, in the administration and procedure of the

Family Court as a whole, and in other unrelated matters.  A review of the records in her ongoing

Family Court actions, her recently dismissed federal cases (now on appeal in the First Circuit)

---

[1] Seguin is a recreational litigant who in 2012 filed two actions in this Court, and at least one in Rhode Island Superior Court, alleging the same facts and requesting the same relief.  The State court matter was dismissed and not appealed.  See Seguin v. Bedrosian, PCSC No. 2012-0124 ("Bedrosian I") (Exhibit A).  Both of the federal cases were dismissed upon application of Younger v. Harris, 401 U.S. 37 (1971).  See Seguin v. Bedrosian, No. 12-00614 ("Bedroisan II"); Seguin v. Chafee, No. 12-00708 ("Chafee").  On January 10, 2013 Plaintiff also filed another civil action in this court, Seguin v. Textron, et al., C.A. No 1:13-cv-00012-SJM-LM, where she makes the same allegations. In addition to naming private parties as defendants, she also names Chief Judge Suttell, Priscilla Glucksman, Attorney General Kilmartin, the Office of the Rhode Island Attorney General and the Rhode Island Child Support Office as State defendants.

and Superior Court lawsuit, and her 2010 Petition for Writ of Certiorari to the Rhode Island

Supreme Court (which was denied) will highlight several insurmountable and complete defenses

to the instant action.  This Court previously applied the doctrine of <u>Younger</u> abstention and the

standard under Rule 12(b)(6) as legal reasons for dismissing Seguin's two previous actions.

Additionally, all of the following support immediate dismissal of the instant action:  lack of

federal jurisdiction; the Anti-Injunction Act; absolute judicial immunity; 11th Amendment

Immunity; *res judicata*; collateral estoppel; and continuous failure to comply with Rule 8 of the

Federal Rules of Civil Procedure.

## II.     BACKGROUND[2]

### A.   The Present Compliant

On February 6, 2013, Seguin filed a 154 page, 17-count Complaint with this Court,

alleging federal question jurisdiction (U.S.D.C. Docket, p. 1, Docket Entry No. 1).  Defendants

moved to dismiss or strike this Complaint for violation of Rule 8 of the Federal Rules of Civil

---

[2] While some of the facts set forth in this section are outside the four corners of the Complaint,
they are provided as background and are helpful, though not necessary, to a full appreciation of
the present matter.  Consistent with the standard of review for a Motion to Dismiss, it is assumed
that all factual allegations in the Complaint are true.  This Court may consider matters of public
record, including documents from state court proceedings, without being required to convert a
12(b)(6) motion to a motion for summary judgment.  <u>In Re Colonial Mortgage Bankers Corp.</u>,
324 F.3d 12, 15 (1st Cir. 2003); <u>Boateng v. InterAmerican University, Inc.</u>, 210 F.3d 56, 60 (1st
Cir.) <u>cert. denied</u> 531 U.S. 904 (2000).  The same holds true for Rule 12 motions based on
jurisdictional grounds.  <u>Land v. Dollar</u>, 330 U.S. 731, 735 n.4 (1947).  Additionally, "courts have
made narrow exceptions for documents the authenticity of which are not disputed by the parties;
for official public records; for documents central to plaintiff's claim; or for documents
sufficiently referred to in the complaint."  <u>Watterson v. Page</u>, 987 F.2d 1, 3 (1st Cir. 1993); <u>Cruz
v. Melecio</u>, 204 F.3d 14, 21 (1st Cir. 2000)(allows a court reviewing a 12(b)(6) Motion to
consider "not only the complaint but also matters fairly incorporated within it and matters
susceptible to judicial notice.").

Procedure. (Docket Entry No. 17). Seguin has since filed, on July 24, 2013, "Plaintiff's First Amended Complaint for Damages and Jury Demand" (hereinafter "First Amended Complaint" or "FAC"). (Docket Entry No. 25).

The First Amended Complaint recites a litany of familiar complaints about Rhode Island, its Family Court and judiciary, and sprinkles in a host of details about Seguin's personal life that are completely irrelevant to the present action. Indeed, most of the allegations in the FAC appear to belong to the companion case of Seguin v. Textron, No. 1-13-cv-00012. Plaintiff not only alleges that the Family Court entered orders "ex parte" and without proper stenographic recordings, but she goes on to allege corruption, vast conspiracies and RICO activities between and among Family Court judges and employees, other state employees including the Governor and the Attorney General of Rhode Island, and private law firms in Rhode Island. The allegations against these defendants have been made and rejected twice by this Court, and once by the Rhode Island Superior Court.

The Defendants named in the FAC are the same. The allegations center around Plaintiff's Family Court proceedings, which she alleges are permeated with fraud and corruption. The allegations against Kilmartin stem from his defense of the state court action and the two previous federal court actions. The FAC is littered with Seguin's own opinions regarding the state of the State of Rhode Island, none of which are relevant or true.

The FAC is shorter than the original Complaint filed in this case, only 66 pages,[3] but still filled with invective and diatribe, short on factual allegations that support any legally cognizable

---

[3] In the FAC, Plaintiff repeatedly makes reference to an Exhibit A; however, no exhibits are attached.

3

cause of action. The FAC contains sixteen "Causes of Action" invoking nearly every Constitutional provision save the prohibition against the quartering of soldiers.

Like all of her other Complaints, this one is full of references to a notation in a Family Court order that her mother does not speak English, that a Guardian Ad Litem asked for a bond if she were to accompany Seguin's minor children to Texas for a visit, that the judges schemed to take her money upfront to pay for salaries, etc. She even opines about why the federal judges in Rhode Island recused themselves.

In fact, Seguin's reach of those with knowledge of the conduct of which she complains seems to extend to the federal bar. She now also alleges that Judge Lisi, Chief Judge of the U.S. District Court for the District of Rhode Island, having been an employee of the Rhode Island Family Court from 1982 to 1987, has first hand working knowledge of the "RICO Manner" in which Defendants impounded litigants' assets. See FAC p.17, ¶1j. Plaintiff goes on to state that Chief Judge Lisi also has first hand working knowledge of the Family Court policy and practice of shredding evidence, fabricating evidence and obstruction of justice. Id. at p.18.

Plaintiff also alleges that Rhode Island U.S. District Judge William Smith has personal and intimate knowledge of common backroom dealings by Rhode Island Family Court judges and officers of the court involving ex-parte communications. See FAC p. 18, ¶ 1k.

However, some of Seguin's allegations are relevant to the instant Motion. For example, in paragraph 54 of the FAC, on page 47, she acknowledges that the Family Court matters are ongoing. Her requests for relief include enjoining enforcement and effectuation of Family Court orders. See FAC ¶¶ 74, 79, 83, 86, 87. These allegations, standing alone, support application of the Younger abstention doctrine. If the Court wants to review the actual pleadings from the ongoing Family Court matters, they have been provided as exhibits.

4

State Defendants are all sued in both their individual or official capacities[4] and Plaintiff seeks either prospective relief or money damages, or both from State Defendants.

## B. Seguin's Litigation History

### 1. Rhode Island Family Court

**Present:** Seguin is actively litigating—via counsel—in Family Court in Rhode Island, specifically in a 2001 Kent County case.[5] The latest entry in that case was an Order finding Seguin in willful contempt on May 9, 2013. (Exhibits C1 and D). The instant First Amended Complaint is full of allegations challenging actions taken in that case.

**Past:** To fully appreciate the scope of the proceedings that Seguin seeks to have this Court review, a summary is necessary. In 2001, Marc Seguin-father of Plaintiff's first child-filed for divorce from the Plaintiff. The last entry in that case was January of 2011. (Family Court Dockets, Exh. B2). At the same time, Marc Seguin filed an Abuse Complaint against the Plaintiff, which was denied. (Family Court Dockets, Exh. B1). Later, Gero Meyersiek- the father of Plaintiff's second child, but never married to the Plaintiff- filed a Kent County Superior Court action against Plaintiff. (Docket, Exh. E). The parties returned to Family Court in 2004, via Complaints for Abuse filed by each father, both of which were denied. (Family Court Dockets, Exhibits B1 and B4). In 2011, Meyersiek filed a Temporary Order for Protection from Abuse. This was granted over Attorney DeSimone's[6] Objection. (Family Court Dockets,

---

[4] Although Steven O'Donnell, Colonel of the Rhode Island State Police, is listed as a Defendant, he has not been served.

[5] Gero Meyersick v. Mary Seguin, F.C. No. K2001-0521M (Exhibits C1 and D).

[6] Mary Seguin's Attorney in the Family Court case – a special entry had been filed.

Exhibits B6 and C2).  The last activity shown on that docket is April 10, 2013.  (Family Court Dockets, Exh. B6).

While these proceedings were ongoing, Plaintiff filed a Superior Court action in 2010 against Meyersiek which complains of some of the same matters as the instant First Amended Complaint.  (Docket, Seguin v. Meyersiek, PCSC 2010-1377, Exh. F1).  In pleadings, Mary Seguin explains her arguments that a January 11, 2010 Order was wrongfully issued by the Family Court, was not warranted by existing law, and was lacking in evidentiary support.  (PCSC 2010-1377, Motion for Sanctions, Exh. F2).  Those allegations centered around the validity of the actions of the parties during their Family Court proceedings.  Id.  This matter was removed to Federal Court, remanded to State Court, and is dormant at this time. (PCSC 2010-1377, Docket, Exh. F1).

According to Family Court documents, also during 2010, Seguin's absence from Rhode Island for extended periods of time caused Gero Meyersiek to file an Emergency Motion for Ex Parte Relief.  That Motion sought to have his daughter placed in his custody, and to allow him to enroll her in the Lincoln School.  An Order entered on January 11, 2010, granting that Motion.  In March of 2010 Meyersiek filed an Emergency Motion to Temporarily Suspend Visitation, based upon Seguin's extended travels to Texas, and based upon a medical excuse submitted by her on March 9, 2010.  On March 9, 2010 an Order entered temporarily suspending Seguin's visitation with the child.

On January 7, 2011 Meyersiek again filed a Complaint for Protection from Abuse.  (Docket, Exh. B6).  Judgment entered on February 4, 2011 restraining and enjoining Mary Seguin from contacting Meyersiek or her daughter until March 4, 2011.  (Judgment, Exh. C2).  Other hearings were held, and the Judgment restraining Seguin from contacting Meyersiek, her

daughter or accessing the report prepared by the Guardian Ad Litem remained in force and effect, all over the objection of Attorney DeSimone on her behalf. (Orders, Exh. C2). The last such Order is dated April 10, 2013 (Exh. B6).

## 2. Rhode Island Supreme Court

In June of 2010, Seguin sought review of the Family Court's action that removed her daughters from the care of her mother and placed them with their respective fathers. She made many of the same allegations there that she does here, and that she did in <u>Bedrosian I</u>, <u>Bedrosian II</u>, and <u>Chafee</u>. (<u>Seguin v. Seguin</u>, SU-10-0220 Exh. G).

Specifically, in her Petition for Writ of Certiorari she claims that the removal of custody was based on the report of the Guardian Ad Litem, who had shredded and destroyed her notes. She claimed—through counsel—that "the Court's actions are depriving this Petitioner of her parental rights and is a violation of every Constitutional and Statutory right of the Petitioner." The Supreme Court denied the Petition and the accompanying Motion for Stay. (Exh. G). The matter returned to the Family Court arena, where it continues today.

## 3. Rhode Island Superior Court

In 2012, Seguin challenged 18 Family Court Orders in a lawsuit filed in the Superior Court of the State of Rhode Island. (PCSC First Amended Complaint, Exh. A2).

In response to the First Amended Complaint in Superior Court, the Defendants (Family Court judges) filed a Motion to Dismiss (Exh. A3) alleging the following:

➢ Lack of jurisdiction of the Superior Court to oversee the operation of the Family Court;

➢ Absolute judicial immunity under the common law as well as the express provisions of 42 U.S.C. 1983; and

7

> ➢ Plaintiff's Complaint failed to state a legally cognizable cause of action—most of the specific claims were for breach of federal criminal statutes, which do not provide a private right of action.

(PCSC Memorandum in Support of Motion to Dismiss and Transcript, Exh. A3 and A4). The Defendants' Motion to Dismiss was granted on August 22, 2012, and Final Judgment entered on October 4, 2012. (PCSC Order and Judgment, Exh. A5 and A6). No appeal was taken.

### 4. __Federal Court__:  __Seguin v. Bedrosian__, USDC No. 1:12-cv-00614 (on appeal, No. 13-1242)

On August 31, 2012 Mary Seguin first introduced herself to this Court with an action against Haiganush R. Bedrosian, the Chief Judge of the Family Court of the State of Rhode Island, and Associate Judges John E. McCann, III, Stephen J. Capineri, and Michael B. Forte. Later added as Defendants were the Attorney General of the State of Rhode Island, Peter F. Kilmartin; Hugh T. Clements, Jr., the Chief of Police of the City of Providence; Steven G. O'Donnell, sued as the "Superintendent of the Rhode Island State Police" and Paul Suttell, as Chief Judge of the Supreme Court of Rhode Island. The claims there have the same nucleus as the present action—"federal and state claims that arose from state custody proceedings involving Seguin." Order, 2013 WL 367722, Jan. 30 2013 at *1. This Court initially denied a Motion for Preliminary Injunction and later, relying heavily on the doctrine of __Younger__ abstention, dismissed the action entirely.[7] In the end, the case spawned over 4000 pages of documentary pleadings, and five lengthy Complaints filed by the Plaintiff.

---

[7] The dismissal encompasses two Orders—one dated December 14, 2012 and one dated January 30, 2013. Both employed a __Younger__ analysis as the primary reason for dismissal of the Amended Complaint.

In finally dismissing the action, this Court declined to "enjoin ongoing Family Court proceedings about the custody of [Seguin's] children, to declare orders issued in those proceedings void, to declare illegal and/or unconstitutional the procedures employed in those proceedings, and to enjoin the Family Court from enforcing its orders."  Order, 2013 WL 367722, Jan. 30, 2013 at *2.  This Court found that the relief sought by Seguin would interfere extensively with ongoing judicial Family Court proceedings, that the state has a strong interest in the issues presented in the Family Court cases, and that Seguin had failed to demonstrate that state procedural law barred the presentation of her claims.  Id.  The claim against Kilmartin, premised on his legal defense of the Superior Court action, was likewise disposed of via the application of Younger, as well as the case against O'Donnell and Clements, sued by Seguin for their anticipated unlawful behavior in their future attempts at enforcing Family Court decrees and orders.  Id. at *2, 3.

As relates to claims against Kilmartin in his individual capacity where Plaintiff sought damages, this Court ruled, "[e]ven if the claims against Kilmartin were not subject to Younger abstention, they would still be dismissed because Seguin does not state a claim upon which relief can be granted."  Id. at *3.  See Fed. R. Civ. P. 12(b)(6).

Seguin has appealed to the First Circuit, listing a number of reasons why her Rhode Island Family Court cases should be halted, and challenging some of the process employed by this Court during consideration of her claims.

### 5. **Federal Court**: **Seguin v. Chafee**, USDC No. 1:12-708 (on appeal, No. 13-1241)

This case likewise found fault with and sought to halt ongoing Family Court matters involving Seguin, her children, and two men who fathered two of her children.  After a review of

the proceedings in Family Court, this Court, again primarily relying upon the doctrine of <u>Younger</u> abstention, dismissed the case.  Order, 2012 WL 6553621, Dec. 14, 2012.  Specifically, this Court first found that the relief sought would "interfere extensively with the ongoing judicial Family Court proceedings" <u>Id</u>. at *5, and that the state has a strong interest in the issues presented in the Family Court cases, including child custody issues and the procedures employed in Family Court.  <u>Id</u>.  As for the third factor, this Court found that Seguin failed to demonstrate that Rhode Island's *procedural law* barred the presentation of the problems she brought to this Court.  <u>Id</u>.  This Court recognized its rule is to assume that state procedures will afford an adequate remedy.  <u>Id</u>. at *6.  In closing, this Court found no applicable exceptions to mandatory <u>Younger</u> abstention.  <u>Id</u>. at *7.

Equally applicable to the present case is this Court's analysis of the merits of Seguin's claims outside of <u>Younger's</u> parameters:

> Seguin's allegations against the defendants suggest a vast conspiracy involving the Rhode Island Executive Office of Health and Human Services, the Rhode Island Child Support Office, the governor of Rhode Island, the Chief Justice of the Rhode Island Supreme Court, and numerous Family Court judges, with a goal of retaliating against Seguin for various reasons and fraudulently inflating her child support obligations to illegally receive federal funding pursuant to the Social Security Act.  Such allegations do not state "a claim to relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (the Rule 12(b)(6) standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusations. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.").  The court may grant a motion to dismiss "claims that are highly implausible or pled only in conclusory terms." <u>Rule v. Fort Dodge Animal Health, Inc.</u>, 607 F.3d 250, 252 (1st Cir. 2010); <u>DM Research, Inc. v. College of Am. Pathologists</u>, 170 F.3d 53, 56 (1st Cir. 1999) ([a] court need not accept unsupported allegations of a "conspiracy" or an "agreement . . . as a sufficient basis for a complaint").  Accordingly, even if Seguin's claims were not subject to <u>Younger</u> abstention, they would still be dismissed because the complaint does not state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6).

<u>Id</u>.

10

## III.   STANDARD OF REVIEW

As this Court set out in its Order of January 30, 2013 in <u>Bedrosian II</u>:

> The analysis of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) proceeds through three steps.   <u>Schatz v. Republican State Leadership Comm.</u>, 669 F.3d 50, 55 (1st Cir. 2012 (<u>citing Ocasio-Hernandez v. Foruno-Burset</u>, 640 F.3d 1, 12 (1st Cir. 2011)).   First, the court must ignore any allegations in the complaint "that simply offer legal labels and conclusions or merely rehash cause-of-action elements."   <u>Schatz</u>, 669 F.3d at 55.   Second, the properly pleaded facts must be taken as true, with all reasonable inferences drawn in favor of the plaintiff.   <u>Id.</u>   Third, the court considers the appropriate allegations and inferences and determines whether "they plausibly narrate a claim for relief." <u>Id</u>.

Order, 2013 WL 367722 at *1.

Applying this familiar rubric to these familiar allegations, it is clear that, once again, Seguin has failed to state a legally cognizable cause of action, and that the instant Motion should be granted.

## IV.   ARGUMENT

### A.   Younger Abstention is Warranted in the Present Case[8]

The First Circuit's decision in <u>Malachowski v. City of Keene</u>, 787 F.2d 704 (1st Cir, 1986) supports the instant Motion.   There, parents sued a number of government actors, including judges, demanding that their daughter be returned to them after having been placed in

---

[8] <u>Chafee</u> was easily disposed of after application of <u>Younger</u>.   (Order, 2012 WL 6553621, Dec. 14, 2012).   <u>Bedrosian II</u> was initially dismissed under <u>Younger's</u> teachings, but after supplemental pleadings were filed by Seguin, this Court found that Seguin did not dispute the application of the <u>Younger</u> abstention doctrine to her claims.   (Order, 2013 WL 367722, at *1).

11

temporary foster care. The First Circuit initially found fault with the parents' claims as plead in federal court insofar as they alleged violation of state law:

> Mere alleged misuse or disregard of state law by state officials does not constitute a deprivation of property without constitutional due process of law. See Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); Friends of Children, Inc. v. Matava, 766 F.2d 35 (1st Cir. 1985). Such deficiencies, if they exist, are readily and adequately correctable under state law in state court. We add that, insofar as the injunctive relief sought by [parents]-ordering return of custody...and withdrawal of the petition against [the daughter]-would be tantamount to reversal of the Keene District Court's order, "[t]he federal courts do not review state court civil proceedings under the guise of the Civil Right Act." Fortune v. Mulherrin, 533 F.2d 21, 22 (1st Cir.), cert. denied 429 U.S. 864, 97 S.Ct. 170, 50 L.Ed.2d 143 (1976).

Malachowski, 787 F.2d at 708.

Here, Seguin's allegations all stem from her domestic and child custody matters in Rhode Island Family Court. These are state law and procedural matters,[9] and cannot support a federal cause of action.

In Malachowski, the First Circuit applied Younger to affirm the lower court's abstention from considering any claims that remained after applying the above jurisdictional matrix. Finally, the First Circuit, separate and apart from Younger, held that "since the field of domestic relations involves local problems peculiarly suited to state regulation and control, a suit whose substance involves domestic relations cannot ordinarily be maintained in a federal court." Id. at 709. In declining to exercise jurisdiction, the First Circuit held that "the injunctive aspects of appellants' complaint, while 'clothed…in the garb of a civil rights action…boil down to a

---

[9] For example, Seguin complains about the discovery process and the lack of stenographic recording in Family Court—certainly not something that this Court needs to—or can—take over (FAC, ¶¶ 1,7, 20, 21).

demand for custody of the child.'" Id. Similarly, here there is no federal jurisdiction over the matters complained of by Seguin.

In Younger v. Harris, *supra*, the Supreme Court held that, barring exceptional circumstances, federal courts should not enjoin pending state criminal proceedings. Although its genesis was in a criminal case, the Younger doctrine presently applies to "noncriminal state proceedings that are judicial in nature." Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 17 (1987); Coggeshall v. Massachusetts Board of Registration of Psychologists, 604 F.3d 658, 664 (1st Cir. 2010). Federal Courts are loathe to interfere with ongoing state court proceedings based on "the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." Younger, 401 U.S. at 44. This principle reflects a "sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." Id. at 44. As the United States Supreme Court recognized in Younger, its cases have repeated time and again that "the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." Id. at 45. Under Younger, "a federal court must abstain from hearing a case if doing so would 'needlessly inject' the federal court into ongoing state proceedings." Coggeshall, 604 F.3d at 664.

Younger compels a federal court to abstain from hearing a case ""when the requested relief would interfere (1) with an ongoing state judicial proceeding; (2) that implicates an

13

important state interest; and (3) that provides an adequate opportunity for the federal plaintiff to advance his federal constitutional challenge.'" <u>Massachusetts Delivery Ass'n v. Coakley</u>, 671 F.3d 33, 40 (1st Cir. 2012) (citation omitted); <u>see also</u> <u>Coggeshall</u>, 604 F.3d at 664.   The "threshold issue" is whether the relief plaintiff seeks in federal court would "interfere…with an ongoing state judicial proceeding."  671 F.3d at 40 (citation omitted).

### 1.   There Are Ongoing State Judicial Proceedings

<u>Younger</u> abstention applies to civil actions involving administration of a State's judicial system.   <u>Juidice v. Vail</u>, 430 U.S. 327 (1977).   The requirement that state proceedings be ongoing is easily satisfied in this case.   Indeed, Seguin's First Amended Complaint is replete with requests to halt the process of the Rhode Island Family Court—at least as to her.   Seguin expressly requests that this Court enjoin the effectuation and enforcement of Family Court orders in ongoing proceedings.  <u>See</u> FAC, ¶ 1, p.6; ¶¶ 54, 74, 77, 79, 83, 86, 87.

Therefore, as a threshold matter, the issue of "interference" is clearly satisfied within the four corners of the First Amended Complaint.  <u>Rio Grande Cmty. Health Ctr., Inc. v. Rullan</u>, 397 F.3d 56, 68 (1st Cir. 2005) ("Interference is . . . usually expressed as a proceeding that either enjoins the state proceeding or has the 'practical effect' of doing so.").   The actions requested by Seguin would "interfere" with any pending state proceeding and moreover, since Seguin had an avenue for review to the Rhode Island Supreme Court, a federal ruling granting requested relief would also "interfere" with the State's appellate process.  <u>See</u> R.I. Gen. Laws § 8-1-2 (writ of certiorari); Rhode Island Constitution Article 10, § 2 ("the Supreme Court shall have final revisory and appellate jurisdiction upon all questions of law and equity").

It is clear that "a federal-court proceeding 'interferes' with a state-court proceeding for <u>Younger</u> purposes when it 'either enjoins the state proceeding or has the practical effect of doing

14

so.'" Montgomery v. Montgomery, 764 F.Supp.2d 328, 333 (D.N.H. 2011). Similarly, if Seguin obtains the request relief, she would "essentially have obtained a judgment that the continuation of the state proceedings . . . violates [her] due process rights." Rossi v. Gemma, 489 F.3d 26, 35 (1st Cir. 2007). As this Court noted in Rossi, "[t]his too is interference for Younger purposes." Id. In sum, Seguin's request for the District Court to enjoin the effectuation and enforcement of Family Court orders in ongoing proceedings surrounding her domestic disputes would constitute "interference" with pending state court proceedings, and thus, Defendants submit that Younger's first prong is easily satisfied.

### 2. Administration of the Family Court Is An Important State Interest

The second Younger prong requires this Court to consider whether an important state interest is implicated. Clearly that element is easily satisfied here. "Family relations are a traditional area of state concern." Moore v. Sims, 442 U.S. 415, 435 (1979); see also Mann v. Conlin, 22 F.3d 100, 106 (6th Cir. 1994) (domestic relations are an area of important state interests); Dunn v. Cometa, 238 F.3d 38 (1st Cir. 2001) (federal courts should not "meddle" in state family courts); Coats v. Woods, 819 F.2d 236 (9th Cir. 1987) (court of appeals found abstention appropriate in domestic relations case); Neustein v. Orbach, 732 F.Supp. 333, 341 (E.D.N.Y. 1990) ("[I]t hardly bears repeating that state courts have a paramount if not exclusive interest in child custody cases."); Morrow v. Winslow, 94 F.3d 1386, 1397 (10th Cir. 1996) ("The state, although not a party, obviously has an interest in the orderly conduct of the proceedings in its courts in a manner which protects the interests of the child and the family relationship); Kelm v. Hyatt, 44 F.3d 415 (6th Cir. 1995) (abstention proper in civil rights challenge to state court application of domestic relations statutes); Liedel v. Juvenile Court of Madison County, Alabama, 891 F.2d 1542 (11th Cir. 1990) (declined to enjoin pending state court child custody

15

proceedings); <u>Offutt v. Kaplan</u>, 884 F.Supp. 1179 (N.D.Ill. 1995) (dismissed section 1983 action where <u>Younger</u> doctrine required court to abstain from staying state court child custody proceedings).

In addition, a state has a vital interest in protecting "the authority of the judicial system, so that its orders and judgments are not rendered nugatory."  <u>Juidice</u>, 430 U.S. at 336 n. 12 (1977).  <u>See also</u> <u>Steffens v. Steffens</u>, 955 F.Supp. 101, 104, n. 4 (D.C. Colo. 1997) <u>citing</u> <u>Pennzoil</u>, 481 U.S. at 12-14; and <u>Juidice v. Vail</u>, <u>supra</u>.  This is a particularly appropriate admonition in the field of domestic relations, over which federal courts have no general jurisdiction, <u>see</u> <u>Ankenbrandt v. Richards</u>, 504 U.S. 689, 697-701 (1992); <u>Dunn v. Cometa</u>, <u>supra</u>, discussing the domestic relations exemption to federal court jurisdiction, and in which the state courts have a special expertise and experience.  <u>Accord</u> <u>Hisquierdo v. Hisquierdo</u>, 439 U.S. 572, 581 (1979).

There is no question the second <u>Younger</u> prong is satisfied in this case.

### 3.  Seguin Has Ample Opportunity To Raise A Constitutional Challenge In Family Court

The third <u>Younger</u> prong requires that the state court proceeding provide an adequate opportunity for a Plaintiff to present her federal constitutional claims.  With respect to this inquiry, the question is whether Seguin had "the opportunity to raise and have timely decided by a competent state tribunal the federal issues involved." <u>Esso Standard Oil Co. v. Cotto</u>, 389 F.3d 212, 218 (1st Cir. 2004).  Initially, this Court should presume that the Rhode Island state courts are able to protect the interests of the federal plaintiff.  <u>Pennzoil</u>, 481 U.S. at 4.  Absent some clear reason to think otherwise, the court must assume that state procedures will afford an

16

adequate remedy. <u>McKenna v. DeSisto</u>, 2012 WL 4486268, at *4 (D.R.I. Sept. 27, 2012) (McAuliffe, J.) (internal quotation marks and citation omitted).

In <u>Pennzoil</u>, the Court noted because all state court judges are bound by the United States Constitution, federal courts:

> cannot assume that state judges will interpret ambiguities in state procedural law to bar presentation of federal claims. … Accordingly, when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.

<u>Id</u>. at 15.

Pursuant to the Supreme Court's teachings in <u>Pennzoil</u>, then, it was incumbent upon Seguin to prove the inadequacy of the Rhode Island state courts. She did not, offering only unsubstantiated rhetoric and outrageous hyperbole. Significant in <u>Pennzoil</u> was the Texas constitution's "open court provision" which provided that all courts shall be open, and remedies provided to all injured persons. Similarly, Rhode Island's Constitution, Art. 1, § 5 provides:

> Every person within this state ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which may be received in one's person, property, or character. Every person ought to obtain right and justice freely, and without purchase, completely and without denial; promptly and without delay; conformably to the laws.

As in <u>Pennzoil</u>, this Constitutional guarantee serves as an additional assurance that Seguin can bring her federal claims in state court. In order to avoid dismissal, Seguin must "demonstrate that 'state procedural law barred [the] presentation of'" her claims. <u>Murphy v. City of Manchester</u>, 70 F.Supp.2d 62, 69 (D.N.H. 1999) (citation omitted). Absent some clear reason to think otherwise, the federal courts must and should "'assume that state procedures will afford an adequate remedy.'" <u>Id</u>. (citation omitted). State courts in Rhode Island can, and do, hear actions based on 42 U.S.C. § 1983. <u>See</u> <u>L.A. Ray Realty v. Town of Cumberland</u>, 698 A.2d 202

(R.I. 1997); <u>Paul v. City of Woonsocket</u>, 745 A.2d 169 (R.I. 2000); <u>Brunelle v. Town of S. Kingstown</u>, 700 A.2d 1075 (R.I. 1997).

There is no question that Seguin has <u>in fact</u> raised these very same issues in both the Family and Superior Courts in Rhode Island. Moreover, nothing precludes Seguin from seeking review by the Rhode Island Supreme Court through a writ of certiorari. <u>See</u> R.I. Gen. Laws § 8-1-2. She might not agree with the outcome. However, that does not matter. <u>See</u>, <u>Huffman v. Pursue, Ltd.</u>, 420 U.S. 592, 610 (1975) ("<u>Younger</u> permit[s] no truncation of the exhaustion requirement merely because the losing party in the state court of general jurisdiction believes that his chances of success on appeal are not auspicious"). In short:

> This is precisely the type of case suited to <u>Younger</u> abstention. <u>See</u> <u>Mann v. Conlin</u>, 22 F.3d 100, 106 (6th Cir. 1994) (holding that <u>Younger</u> abstention was appropriate in §1983 action alleging that a state court judge violated plaintiff's due process rights in custody battle). Plaintiffs desire wholesale federal intervention into an ongoing state domestic dispute. They seek vacation of existing interlocutory orders, and a federal injunction directing the future course of the state litigation. This is not the proper business of the federal judiciary. Accordingly, <u>Younger</u> abstention is appropriate…

<u>H.C. v. Koppel</u>, 203 F.3d 610, 613-14 (9th Cir. 2000).

### 4. The Bias Exception

Even if <u>Younger</u>'s three-part test is satisfied, a "federal court may nonetheless intervene to halt an ongoing state judicial proceeding if the plaintiff demonstrates 'bad faith, harassment, or any other unusual circumstance.'" <u>Brooks</u>, 80 F.3d at 639. These exceptions are "narrowly construed." <u>Malachowski</u>, 787 F.2d at 709.

"[T]he baseline showing of bias necessary to trigger <u>Younger's</u> escape mechanism requires the plaintiff to offer some evidence that abstention will jeopardize his due process right to an impartial adjudication." <u>Brooks</u>, 80 F.3d at 640 (1st Cir. 1996). Throughout her pleadings,

18

Seguin labels every Family Court judge, the Govenor, the Attorney General, the federal judiciary, and many others as biased against her, and that the structure of the Family Court system is unfair to her and myriad other individuals. She offers nothing but adverse rulings to support her general dissatisfaction with the Family Court.

### a. Actual Bias

The Rhode Island Family Court is a creature of statute, established in 1961 with jurisdiction over petitions for divorce and "all motions for allowance, alimony, support and custody of children." R.I. Gen. Laws §8-10-3(a). Its decisions are reviewable by the Rhode Island Supreme Court. R.I. Gen. Laws §8-1-2 and §14-1-52; D'Arezzo v. D'Arezzo, 267 A.2d 683 (R.I. 1970).

Seguin's scattershot claims of bias and retaliation ring hollow in light of the fact that she did not request recusal of the family court judge who had the case when she filed her District Court case. See Brooks, 80 F.3d at 640 ("The bias exception to the Younger abstention doctrine is inapposite if an ostensibly aggrieved party fails to employ available procedures for recusal of allegedly biased judges."). In this same vein, Seguin has not presented any allegations of actual bias on the part of any Supreme Court justice. She was simply dissatisfied with the outcome of her Petition for Writ of Certiorari, and believes that because Chief Justice Suttell was sued by another disgruntled family court litigant—Gladys Cok[10]—years ago, he must be biased against her. As such, because the establishment of judicial bias requires "more than the frenzied

---

[10] Seguin repeatedly references the Cok cases in her First Amended Complaint as support for her various positions. See Cok v. Forte, 69 F.3d 531 (1st Cir. 1995); Cok v. Forte, 877 F.Supp. 797 (R.I. 1995); Cok v. Family Court of Rhode Island, et al., 985 F.2d 32 (1st Cir. 1993); Cok v. Cosentino, 876 F.2d 1 (1st Cir. 1989).

brandishing of a cardboard sword" Seguin's allegations of actual bias fall flat.  <u>Brooks</u>, 80 F.3d at 640.

### b.   Structural Bias

The present complaint does not contain a strong argument regarding the structure of the Family Court.   Instead, Plaintiff continuously reiterates unfounded allegations that the Family Court is controlled by bribes, kickbacks, and racist sentiment.

Seguin's claims are the result of her inability to understand just why she does not presently have custody of her two daughters.  She appears to relish the role of victim.   Hers is a fundamental disagreement with valid Orders entered by the Family Court—where she is represented by counsel.  She cannot show any bias, actual or structural, because none exists.

Seguin cannot avoid the application of the <u>Younger</u> doctrine simply by disagreeing with the courts in Rhode Island.   Domestic relations cases like Seguin's and Cok's often involve dissatisfied parties.  If this Court allows the instant action to proceed, the exceptions to <u>Younger</u> will swallow <u>Younger</u>'s general rule.

### B.   <u>Seguin Has Failed To State A Claim Pursuant to Rule 12(b)(6).</u>

In order to survive a 12(b)(6) motion to dismiss, a plaintiff must state, "a claim to relief that is plausible on its face."  <u>Bell Atl. Corp.</u>, 550 U.S. 544, 570 (2007); <u>see also</u> <u>Iqbal</u>, 556 U.S. at 678 (the Rule 12(b)(6) standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusations.  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.").   The First Circuit Court has stated that a plaintiff's complaint must be more than a series of legal conclusions "couched as facts."  <u>Mead v. Independence Ass'n.</u>, 684 F.3d 226, 231 (1st Cir. 2012); <u>see also</u> <u>Ocasio-Hernandez v. Fortuño-Burset</u>, 640 F.3d 1, 12 (1st Cir. 2011).  If a plaintiff's complaint is composed solely of

vapid factual accusations that are, "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture," then the complaint may be dismissed.  SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).  Even before Iqbal, the First Circuit Court held that "unlikely speculations" and baseless allegations of a "conspiracy" should not be treated as "a sufficient basis for a complaint."  DM Research, Inc. v. College of Am. Pathologists, 170 F.3d 53, 56-57 (1st Cir. 1999).

Seguin's First Amended Complaint is an exhaustive account of how the Governor of Rhode Island, the Chief Judge of the Rhode Island Supreme Court, several  Family Court judges, and other state and government agents have all participated in a vast conspiracy against her. Seguin claims that Rhode Island defendants were corrupt for over a decade's long and on-going scheme to deprive her of her intangible right to honest services and she seeks damages for retaliatory, conspiratorial, and racketeering and for their policies and pattern of local public corruption customs.  See FAC ¶ 1, pp. 2-3.  She goes on to state that, "Defendants were bribed and continue to be bribed, and received and continue to receive kickbacks from Gero Meyersick and Textron to grant favorable court orders benefitting them…" Id. at 3.  Plaintiff further alleges that after she contacted the FBI, Defendants retaliated against her with Family Court Orders. See FAC ¶ 1, pp. 4-5.   Apart from making these, and other, facially implausible accusations, Seguin fails to allege any specific actions taken by State Defendants that would implicate any of them in a conspiracy and a RICO enterprise targeted against her.

Plaintiff apparently thinks that if she repeats certain phrases, allegations and statements enough times, both within this FAC and after having already made these same allegations in previous complaints, it will assist her in proving her case.   Unfortunately for Plaintiff, her repetition does not change the strength of her case.  It simply demonstrates that she has no "real"

facts to support her position and consequently, Plaintiff has failed to articulate any facts that would allow this FAC to survive a dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Plaintiff's allegations are exactly what courts have cautioned against-- legal conclusions "couched as facts."  See Mead v. Independence Ass'n., 684 F.3d 226, 231 (1st Cir. 2012).

In addition to seeking injunctive relief, Seguin also seeks monetary damages from the Defendants for the alleged harms they caused.  See FAC pp. 2, 4, 66.  This  Court recently had the opportunity in both Bedrosian II and Chafee to address Plaintiff's claims for money damages that may be outside Younger abstention parameters and, in both cases, ruled that Plaintiff fell short of her burden, and granted Defendants' Motions to Dismiss pursuant to Rule 12(b)(6). Seguin v. Bedrosian et al., 2012 WL 6203004 at *10, Dec. 12, 2012 (Bedrosian II); Seguin v. Chafee, et al., 2012 WL 6553621 at *7, Dec. 14, 2012 (Chafee).  In Bedrosian II, where Plaintiff sought damages from Kilmartin (a named defendant in that case) the Court noted,

> Seguin appears to allege that Kilmartin violated various laws by seeking to dismiss her § 1983 claim brought in the Superior Court and, in that action, making various legal arguments that were without merit yet were accepted by the Superior Court when it dismissed the action.  Even if this claim were not subject to Younger abstention, it would still be dismissed because it does not state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).

Seguin v. Bedrosian et al., 2012 WL 6203004 at *10, Dec. 12, 2012.

In Chafee, the Court stated that Seguin's allegations against Defendants suggest a vast conspiracy with a goal of retaliating against her for various reasons and fraudulently inflating her child support obligations to illegally receive federal funding pursuant to the Social Security Act. Seguin v. Chafee, et al., 2012 WL 6553621 at *7, Dec. 14, 2012.  The Court in Chafee found that these allegations do not state a "claim to relief that is plausible on its face."  Id., citing  Bell Atl.

22

v. Twombly, 550 U.S. at 570; see also Ashcroft v. Iqbal, 556 U.S. at 678.  The Court went on to rule that even if Seguin's claims were not subject to Younger abstention, they would still be dismissed because the complaint does not state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  Id.  Plaintiff makes the same allegations in this present case.  See FAC at p. 4.    This Court further ruled that a court may grant a motion to dismiss "claims that are highly implausible or pled only in conclusory terms."  Citing Rule v. Fort Dodge Animal Health, Inc., 607 F.3d 250, 252 (1st Cir. 2010); DM Research, Inc. v. College of Am. Pathologists, 170 F.3d 53, 56 (1st Cir. 1999) ([a] court need not accept unsupported allegations of a "conspiracy" or an "agreement … as a sufficient basis for a complaint").  Id.  The Court also stated that "… even if Seguin's claims were not subject to Younger abstention, they would still be dismissed because the complaint does not state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  Id.

Plaintiff's allegations in the FAC are the same that she has made in Bedrosian II and Chafee.  As has been previously found, this Court should again find that Plaintiff's FAC fails to state a claim upon which relief can be granted and should grant Defendants' Motion to Dismiss.

## C.  The Anti-Injunction Act Bars Consideration of Seguin's Complaint

Notwithstanding Younger, this Court cannot grant the relief Seguin seeks.  Specifically, the "Anti-Injunction Act" (AIA) 28 U.S.C. 2283 provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The AIA applies to prohibit a federal court from enjoining the court or a party in a state-court proceeding from continuing the litigation or complying with or enforcing state court orders. "Proceedings in state courts should normally be allowed to continue unimpaired by

intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately to the [Supreme] Court [of the United States]." Atl. Coast Line R. Co. v. Bd. Of Locomotive Eng'rs, 398 U.S. 281, 287 (1970).

Seguin expressly requests that this Court enjoin the enforcement of Family Court Orders See FAC, ¶ 1, p.6; ¶¶ 54, 74, 77, 79, 83, 86, 87.  Consequently, the AIA applies.

### D.  The Defendants Are Absolutely Immune From Liability Under the Common Law And Section 1983.

It is axiomatic that judges are absolutely immune from civil suits for their judicial acts. See, Stump v. Sparkman, 435 U.S. 349, 355-56 (1978); Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989); Fariello v. Campbell, 860 F.Supp.54 (E.D. NY 1994).  Judicial immunity is immunity from suit, not just immunity from the assessment of damages.  See, Mireles v. Waco, 502 U.S. 9, 11 (1991).  When a judge of a court of record acts within his or her judicial capacity, the judge is protected from suit by absolute privilege.  Harley v. Perkinson, 148 Misc.2d 753, 560 N.Y.S.2d 957 (1990).

The only prerequisites to judicial immunity are that the judge not act in the "clear absence of all jurisdiction" and that he or she be performing a judicial act or one that is judicial in nature.  Stump v. Sparkman, 435 U.S. at 356-57.  There can be no dispute that each judicial defendant had authority to rule in the cases before them.  Even if Plaintiffs' claims of improper service of process are to be believed, that represents a procedural error, and not a "lack of all subject matter jurisdiction."  Id.

Judicial immunity is premised upon the "general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal

24

consequences to himself."  See  Sparkman at 355, quoting Bradley v. Fisher, 80 U.S. 335 (1871).

"A judge will not be deprived of immunity because the action he took was in error, was done

maliciously, or was in excess of his authority; rather he will be subject to liability only when he

has acted in the 'clear absence of all jurisdiction.'"  See Id. at 356-57, quoting Bradley, at 351.

The scope of the judge's jurisdiction must be construed broadly where the issue concerns the

judge's immunity from liability.  See Id.  The doctrine of judicial immunity even extends to

federal civil rights actions.  See Id.

Cok is dispositive of the instant action.  There, a litigious, disgruntled ex-wife sued a

Family Court judge, a court-appointed Guardian Ad Litem and a conservator of assets.  That case

was brought in federal court and was disposed of by a *per curiam* opinion authored by then

Circuit Judge Breyer for failure to state a claim.  Seguin's First Amended Complaint tracks the

one found to lack merit in Cok.  The basis for Cok's claims were that the Family Court and the

GAL were conspiring to have her pay fees.  The statutory bases for her claims were the same as

here—18 U.S.C. §§ 241-242, §§ 1961-1962 and 42 U.S.C. §§ 1983-1986.  Cok complained of

actions taken pursuant to *ex parte* orders.  The First Circuit dismissed her claims in their entirety

on two grounds, one being absolute judicial immunity.  The other ground was the lack of a

private remedy for alleged violations of federal criminal statutes and will be discussed below.  In

summary, Cok, standing alone, mandates dismissal of Seguin's First Amended Complaint.

In addition to common law immunity, the federal statute pled as a basis for Plaintiff's

complaint expressly bars suits against "judicial officers."  Seguin's federal claims are, of

necessity, premised on 42 U.S.C. § 1983, which provides in pertinent part:

> "[e]very person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the

25

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, <u>except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable</u>."  (Emphasis added).

Since, by its very terms § 1983 cannot be used as a vehicle to bring federal claims against judges acting in their official capacity, none of the Seguin's federal claims can survive.

### E.  <u>11th Amendment Provides Immunity To These Defendants</u>

Neither a state nor a state official acting in his or official capacity is a "person" within the meaning of § 1983.  <u>Will v. Michigan</u>, 491 U.S. 58 (1989).  Since this action seeks not simply prospective injunctive relief, but retrospective relief in the form of undoing the actions of the Rhode Island Family Court, it is barred by the Eleventh Amendment.  <u>Cory v. White</u>, 457 U.S. 85 (1982) ("the Eleventh Amendment by its terms clearly applies to a suit seeking an injunction").  All State Defendants are named in their official capacity.  As such, in that capacity, they are provided immunity by the 11th Amendment.

### F.  <u>The Doctrine of *Res Judicata* and Collateral Estoppel Act As A Complete Bar</u>

The Superior Court Judgment entered in favor of these judicial Defendants in Seguin's 2012 Superior Court matter bars any consideration of the First Amended Complaint.  Further, based on this Court's two previous decisions, the Defendants have the benefit of the doctrine of collateral estoppel.

A final judgment on the merits precludes a party from relitigating issues that were or could have been raised in a prior action.  <u>C.I.R. v. Sunner</u>, 333 U.S. 591 (1948).  The elements of *res judicata* are the same in Rhode Island state courts and federal courts:  (1) identity of parties;

26

(2) identity of issues; and (3) finality of judgment. Allen v. McCurry, 449 U.S. 90, 94 (1980);

E.W. Audet & Sons, Inc. v. Fireman's Fund Ins. Co., 635 A.2d 1181 (R.I. 1994). *Res Judicata*

extinguishes a litigant's claims even if that party is "prepared in a second action to present

evidence or grounds or theories of the case not presented by the plaintiff in the first action, or to

seek remedies or forms of relief not demanded in that action." Id. "When a plaintiff pleads a

claim in federal court, he must, to avoid the onus of claim splitting, bring all related … claims in

the same lawsuit so long as any suitable basis for subject matter jurisdiction exists." Kale v.

Combined Ins. Co. of America, 924 F.2d 1161, 1164 (1st Cir. 1991).

> **1.  Federal law and procedure compel the conclusion that the Superior Court  Judgment was "on the merits" and it is entitled to preclusive effect.**

To begin with, the Full Faith and Credit Clause of the United States Constitution

mandates that one court give effect to another court's judgment in the same way that the issuing

court would.   U.S. Const. Art. IV, §1.[11]   This is true between courts of different states, and

between state and federal courts. Supreme Lodge v. Meyer, 265 U.S. 30 (1924); Lamarque v.

Fairbanks Capital Corp., 927 A.2d 753 (R.I. 2007); Nottingham v. Weld, 377 S.E.2d 621 (Va.

---

[11]   The text of that section states in part "Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state."   Congress enacted a full faith and credit statute that was codified in 28 U.S.C. § 1738, which states "[t]he records and judicial proceedings of any court of any State, Territory, or Possession of the United States shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such state, Territory or Possession from which they are taken." 28 U.S.C. § 1738 (1948). "Under the full faith and credit statute, 28 U.S.C. § 1738, a judgment rendered in a state court is entitled to the same preclusive effect in federal court as it would be given within the state in which it was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984).

1989); DiSaia v. Capital Indus., Inc., 320 A.2d 604 (R.I. 1974); Rounds v. Prov. S.S. Co., 14 R.I. 344 (R.I. 1884); Pettijohn v. Dale County, 446 So.2d 1143 (Fla. Dist. Ct. App. 1984); Strates Shows, Inc. v. Amusements of America, Inc., 646 S.E.2d 418 (N.C. App. 2007); Schwartz v. Hynum, 933 So.2d 1039 (Miss. 2006); Denny Wiekhorst Equip. Inc. v. Tri-State Outdoor Media Group, Inc., 693 N.W.2d 506 (Neb. 2005); U.S. Mortgage v. Laubach, 73 P.3d 887 (Ok. 2003).

In Hays v. Louisiana Dock Co., 452 N.E.2d 1383 (Ill. 1983), the Full Faith and Credit Clause was the basis for application of the doctrine of *res judicata*. There, a federal court judgment was the basis for dismissal in the state court system of Illinois. That court began by noting that the Full Faith and Credit Clause requires that one court system give the same *res judicata* effect to a judgment as it would be given in the court system which rendered it, citing Durfee v. Duke, 375 U.S. 106 (1963). The question then became what effect a federal court would give to the judgment—since it was not void, it was given full preclusive effect.

In Baez–Cruz v. Municipality of Comerio, 140 F.3d 24 (1st Cir. 1998) an action brought pursuant to 42 U.S.C. § 1983 was determined to be barred by the doctrine of *res judicata* by a State administrative hearing. Addressing whether the plaintiff had a "full and fair opportunity" to litigate, the First Circuit noted that the earlier proceeding "need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause." Id. at 30. (citations omitted). Due process requires only notice and *an opportunity* to present an objection. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950); Mills v. Howard, 280 A.2d 101 (R.I. 1971).

Federated Dept. Stores v. Moitie, 452 U.S. 394 (1981) involved a dismissal for failure to state a claim on which relief could be granted, pursuant to Rule 12(b)(6). The United States Supreme Court, in discussing elementary principles of *res judicata*, applied the doctrine to bar a

28

second claim, finding that the dismissal was on the merits.  Expressing concern over crowded

court dockets, the Court observed:

> The predicament in which respondent finds himself is of his own
> making…[W]e cannot be expected, for his sole relief, to upset the general
> and well-established doctrine of *res judicata,* conceived in the light of the
> maxim that the interest of the state requires that there be an end to
> litigation-a maxim which comports with common sense as well as public
> policy.   And the mischief which would follow the establishment of
> precedent for so disregarding this salutary doctrine against prolonging
> strife would be greater than the benefit which would result from relieving
> some case of individual hardship.

Id. at 401-02, citing Reed v. Allen, 286 U.S. 191, 198-99 (1932).

The Motion to Dismiss in State Court was premised on substantive grounds (Exh. A3 and

A4).  The grant of a Motion to Dismiss made under Rule 12(b)(6) for failure to state a claim,

unlike a procedure-driven motion—such as one for lack of standing or improper service—

operates as a judgment "on the merits" for purposes of *res judicata*.  2 Moore's Federal Practice,

§12.34 [6][a] (3rd ed. 1997).  This is so especially when, as was the case here, Seguin amended

her original State court complaint prior to the entry of judgment, and the judgment did not

specify that it was *not* on the merits.  (Exh. A6).  Betances v. Quivos, 603 F.Supp. 201 (D.P.R.

1985).  In Bell v. Hood, 327 U.S. 678, 682 (1946) the United States Supreme Court noted that "it

is well settled that the failure to state a proper cause of action calls for a judgment on the merits

and not for a dismissal for want of jurisdiction."  Accord, Exch. Nat. Bank of Chicago v. Touche

Ross & Co., 544 F.2d 1126, 1130-31 (2nd Cir. 1976) (recognizing that "judgments under Rule

12(b)(6) are on the merits, and with *res judicata* effects").

### 2. State procedural rules and precedent mandate application of *res judicata* to bar the present action.

The Rhode Island Superior Court Rules of Civil Procedure also provide support for

Defendants' argument:

> Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision (b) and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue or for lack of an indispensable party, operates as an adjudication on the merits.

Super. Ct. Rules 41(b)(3).

Since the Superior Court Judgment was not based entirely on lack of jurisdiction (it was

only one argument), improper venue, or lack of an indispensable party, the applicable Superior

Court rules mandate a determination that the Judgment was "an adjudication on the merits"

entitled to preclusive effect.

The fundamental rule is stated in the Restatement Second of Judgments (1982) §19: "A

valid and final personal judgment rendered in favor of the defendant bars another action by the

plaintiff on the same claim." The Restatement avoids use of the term "on the merits" "because

of its possibly misleading connotations." Comment (a). That section continues:

> The rule that a defendant's judgment acts as a bar to a second action on the same claim is based largely on the ground that fairness to the defendant, and sound judicial administration, require that at some point litigation over the particular controversy come to an end. These considerations may impose such a requirement even though the substantive issues have not been tried, especially if the plaintiff has failed to avail himself of opportunities to pursue his remedies in the first proceeding, or has deliberately flouted orders of the court.

The Restatement rule is applicable to a judgment for the defendant on a motion to dismiss

for failure to state a claim. "Such a result is warranted by the ease with which pleadings may be

amended…and by the unfairness of requiring the defendant to submit to a second action (often

30

initiated long after the first has come to an end) when no such amendment is sought, or when no appeal has been taken from an erroneous denial of leave to amend."  Commend (d).

The identical nature of Plaintiff's complaints bar the current action from judicial consideration under the doctrine of *res judicata*.  Plaintiff's allegations stem from the same "nucleus of operative fact"—her proceedings in Rhode Island Family Court.  All four complaints lodge practically identical allegations against the same defendants. For example, in Plaintiff's Complaint in <u>Seguin v. Bedrosian, et al.</u> (<u>Bedrosian II</u>), paragraph (1), Seguin states:

> Associate Justice John E. McCann III conspired with, aided and abetted the Defendants in conducting sham and fraudulent proceedings in violation of 42 U.S.C. sec. 667(b)(2), calculated to retaliate against the Plaintiff for reporting their federal and constitutional violations to the U.S. Justice Department that caused an on-site investigation in Rhode Island by the Federal Justice Department, and to aid and abet the Defendants to unjustly receive 'incentive payments to states' federal funding and payments pursuant to 42 U.S.C. sec. 658a, for which the Defendants would not be eligible when it violates 42 U.S.C. sec. 667(b)(2)."

Likewise, in the Second Amended Complaint in <u>Seguin v. Chafee, et. al</u> (<u>Chafee</u>), Plaintiff writes:

> Associate Justice John E. McCann III conspired with, aided and abetted state executive actors in conducting sham and fraudulent child support proceedings in violation of 42 U.S.C. sec. 667(b)(2), calculated to retaliate against the Plaintiff for reporting their federal and constitutional violations to the U.S. Justice Department that caused an on-site investigation in Rhode Island by the Federal Justice Department, and to aid and abet the state Title IV-D agency to unjustly receive 'incentive payments to states' federal funding and payments pursuant to 42 U.S.C. sec. 658a, in their scheme to pad their budgets that operate illegal and unconstitutional state activities under color of state law with federal funding, for which the Defendants and the State of Rhode Island would not be eligible when it violates 42 U.S.C. sec. 667(b)(2)."

And again, in this case, <u>Seguin v. Suttell, et al.</u>, Plaintiff alleges in the FAC:

> Associate Justice John E. McCann III, Haiganush Bedrosian and Paul Suttell conspired with, aided and abetted the executive office R.I. family

31

court enterprise participants in conducting sham and fraudulent child support proceedings in violation of 42 U.S.C. sec. 667(b)(2), calculated to retaliate against the Plaintiff for reporting their federal and constitutional violations to the U.S. Justice Department that caused an on-site investigation in Rhode Island by the Federal Justice Department, and to aid and abet the executive office R.I. family court enterprise participant to unjustly receive 'incentive payments to states' federal funding and payments pursuant to 42 U.S.C. sec. 658a, for which the R.I. family court enterprise participant and the State of Rhode Island would not be eligible when it violates 42 U.S.C. sec. 667(b)(2)."

The above is just one example of the redundancies found within Plaintiff's multiple complaints. The near identical nature of the allegations coupled with the three previous decisions handed down by various Courts is a classic example of where *res judicata* should be employed, as the doctrine was established in an effort to bring finality to litigation. Review of the operative complaints demonstrate that the State Defendants were either specifically named or at least mentioned in each complaint. It would, therefore, be an untenable argument that Plaintiff was unaware of each defendant's alleged involvement when filing each complaint. "A party cannot escape…*res judicata* by asserting its own failure to raise matters clearly within the scope of a prior proceeding." Underwriters Nat. Assur. Co. v. North Carolina Life and Accident and Health Ins. Guaranty Assoc., 455 U.S. 691, 710 (1982). The fact that each person was not specifically named in all three complaints does not act as a bar to *res judicata* because the doctrine is applicable with regards to every matter previously brought as well as "any other admissible matter which might have been offered." Cromwell v. Sac County, 94 U.S. 351 (1876).

The mainstay of issue preclusion is a prohibition on relitigating "an issue of ultimate fact" because the parties already "had a full and fair opportunity to litigate." Foster-Glocester Regional School Committee v. Board of Review, 854 A.2d 1008 (R.I. 2004); Taylor v. Sturgell,

553 U.S. 128 (2008).   The First Circuit has noted that a proceeding "need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause," which requires notice and an opportunity to present an objection.   Baez-Cruz v. Municipality of Comerio, 140 F.3d 24, 30 (1st Cir. 1998).   Plaintiff has been afforded such opportunity-- an outcome against her does not alter the fact that she has already had her day in court.

Other courts having addressed similar fact patterns have held such suits to be barred under the doctrine.  In Robbins v. District Court, 592 F.2d 1015 (C.A.Iowa 1979), parental rights of young children were terminated.   Following an appeal in the Iowa Supreme Court, which found against the parents, a section1983 action was filed in federal district court rather than appealing to the United States Supreme Court.  Id.  Noting the new action was "based on the same nucleus of operative fact" as that in the state courts, the Court granted defendant's motion to dismiss holding that the section1983 claim was barred by the doctrine of *res judicata* because the parties, the causes of action, and the complaints in both the state court and federal court actions were identical.  Id. at 1018.  *Res judicata* attaches completely to bar the present action.

### 3.  Collateral Estoppel applies via this Court's opinions in Bedrosian II and Chafee.

In prior lawsuits brought by Seguin, this Court dismissed the same claims that Seguin is asserting herein. Therefore, the doctrine of collateral estoppel bars Seguin from asserting those counts yet again.

Collateral estoppel "prohibits a party from re-litigating issues that have previously been adjudicated."  Enica v. Principi, 544 F.3d 328, 336 (1st Cir. 2008).   The well established requirements for collateral estoppel are:  (1) an identity of issues (that is, that the issue sought to

be precluded is the same as that which was involved in the prior proceeding); (2) actuality of litigation (that is, that the point was actually litigated in the earlier proceeding); (3) finality of the earlier resolution (that is, that the issue was determined by a valid and binding final judgment or order); and (4) the centrality of the adjudication (that is, that the determination of the issue in the prior proceeding was essential to the final judgment or order). Faigin v. Kelly, 184 F.3d 67, 78 (1st Cir. 1999); see Ashland v. GAR Electroforming, 729 F. Supp.2d 526, 545 (D.R.I. 2010). In Grieve v. Tamerin, 269 F.3d 149, 154 (2nd Cir. 2001), the Second Circuit held that collateral estoppel precluded consideration of plaintiff's claims because in a parallel proceeding with the same claims, the Southern District of New York had ruled on the issue of abstention (in favor of state court adjudication) and, therefore, "it conclusively established that principle between the parties."

Much like the circumstances in Grieve, Seguin's claims in this case are nearly identical to those in her prior federal cases. This case presents the same Younger abstention issue and failure to state a claim issue as the previous cases. See Seguin, 12-cv-614-JD, 2013 WL 367722, at *2-*3; Seguin, 12-cv-708-JD, 2012 WL 6553621, at *4-*8. The abstention issue was litigated in the prior two actions and decided against Seguin on the merits. See Id. Upon the entry of judgment, the abstention ruling (and the ruling that Seguin's claims failed to state a claim) became final. See Id. "The propriety of a federal court's abstention in favor of the state court's adjudication . . . conclusively establish[es] that principle between the parties." Id. at 153.

The failure to state a claim issue was also fully litigated in Plaintiff's previous two cases. As discussed in section "B" above, the allegations raised in Seguin's previous two cases are the same that she is once again raising now. The prior judgments are final determinations for purposes of collateral estoppel despite Seguin's appeal of those judgments. See In re Kane, 254

F.3d 325, 328 (1st Cir. 2001); Charles Alan Wright, Arthur R. Miller, et al., Federal Practice & Procedure § 4433 (2d ed. rev. 2013). This principle governs any further litigation, so Seguin is collaterally estopped from bringing her previously-rejected claims yet again.

> ### G.  **The Complaint Does Not Contain A Short And Plain Statement Of A Claim Showing That Plaintiff Is Entitled To Relief.**

For purposes of brevity and economy, the contents and arguments contained in the "Memorandum in Support of Motion to Dismiss or, in the alternative, Strike 'Plaintiffs' Complaint for Damages and Jury Demand" (Docket Entry No. 17) are fully incorporated and relied upon by these Defendants.

## V.    CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the instant Motion be granted, and this case be dismissed.

Defendants,

Suttell, Chafee, Constantino, Santilli, Glucksman, Bedrosian, McCann, Forte, Kilmartin, Giarrusso and Capineri
By Their Attorney,

PETER F. KILMARTIN,
ATTORNEY GENERAL


*/s/ Rebecca Tedford Partington*
*/s/ Susan E. Urso*
_____
Rebecca Tedford Partington, #3890
Susan E. Urso, #4688
Assistant Attorneys General
150 South Main Street
Providence, Rhode Island 02903
Tel:  401-274-4400
Fax:  401-222-2995

## **CERTIFICATION**

I hereby certify that I have filed the within Motion via the ECF system and that a copy is available for viewing and downloading and that I mailed a copy by first class mail, postage prepaid on this 5th day of September, 2013.

Mary Seguin
PO Box 4111
Edmonton, AB T6E4S8
Canada

*/s/ Susan E. Urso*
_____

36